UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DEBRA BOEKEL, | : | Case No. 3:11-cv-290 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS SUPPORTED
BY SUBSTANTIAL EVIDENCE, AND AFFIRMED;
AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 8-20) (ALJ's decision)).

**I.**

On June 15, 2007, Plaintiff filed applications for DIB and SSI, alleging disability since October 1, 2006, due to anxiety, depression, hepatitis B, feet problems, and extreme fatigue. (Tr. 112-13, 213, 228). The claims were denied initially and on reconsideration (Tr. 117, 120, 125, 128). Plaintiff timely requested a hearing. (Tr. 131). A hearing was held before an ALJ on March 18, 2010. (Tr. 141). Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. (*Id.*) The ALJ denied benefits in a decision dated April 7, 2010. (Tr. 45-65).

Plaintiff requested review by the Appeals Council. (Tr. 169-72). The Appeals Council denied review in a decision dated June 17, 2011, making the ALJ's decision the final decision of the Commissioner. (Tr. 41). Thereafter, Plaintiff commenced this action in federal court pursuant to 42 U.S.C. §§ 405(g) and 1383 for judicial review of the Commissioner's final decision.

Plaintiff was 40 years old at the date of her alleged onset date, a younger person in the eyes of Social Security. (Tr. 58). She has a high school education. (Tr. 233). Plaintiff's past relevant work consisted of short order cook, general cashier, and general factory worker. (Tr. 58).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since October 1, 2006, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: hepatitis B; chronic right foot pain; depression, and; panic disorder with agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: no climbing of ropes, ladders, or scaffolds; no repetitive

        bending or twisting at the waist; no exposure to hazards; no direct dealing with the general public; no work on uneven surfaces; no repetitive use of foot controls on the right; only lo stress jobs with no production quotas; limited to simple one- or two-step tasks requiring little, if any concentration; and limited contact with co-workers and supervisors and no teamwork.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 25, 1966, and was 40 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date (20 CFR 404.1563 and 416/963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), and 416/969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 10-20).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 20).

On appeal, Plaintiff argues that: (1) the ALJ erred by failing to grant proper weight to the opinion of consultative psychological examiner Dr. Kramer; and (2) the ALJ erred by failing to find that Plaintiff's neurogenic bladder[1] was a severe physical impairment. The Court will address each argument in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

---

[1] "Neurogenic" refers to dysfunction of the urinary bladder due to disease of the central nervous system or peripheral nerves involved in the control of urination.

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

The record reflects that:[2]

### Physical Impairments

The record contains treatment notes from Plaintiff's prior family physician, Dr. Udrea, beginning in May 2004, at which time Plaintiff was diagnosed with anxiety and complained of "get[ting] nervous a lot" and being "sometimes depressed." Plaintiff was started on Zoloft. (Tr. 496).

In January 2008, Plaintiff was prescribed Xanax for her depression and anxiety. (Tr. 748). By November 2008, Dr. Kay noted that Plaintiff was suffering from "pain all over," as well as severe anxiety and panic attacks. (Tr. 736). His opinion was that Plaintiff's generalized pain was likely due to a combination of anxiety, depression, and fibromyagia. *Id*. He recommended that Plaintiff continue pain management. (*Id*.)

---

[2] Plaintiff alleges disability due to her physical and mental impairments, but only challenges the ALJ's finding with respect to her mental limitations and bladder condition. Accordingly, the Court will only address those medical issues. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

Plaintiff consulted with Dr. Monsour on June 4, 2009 with complaints of urinary issues over approximately the last eight months. (Tr. 560). She complained of urinary frequency, urgency, urge incontinence, and nocturia.[3] Dr. Monsour started Plaintiff on intermittent catheterization three times a day. On June 25, 2009, Plaintiff was seen again, at which time Dr. Monsour suspected a neurogenic bladder. He suggested that Plaintiff increase her catheterizing more frequently to four times a day. (Tr. 559).

On January 4, 2010, Plaintiff continued to report "total body pain" to Dr. Kay. (Tr. 691). Dr. Kay stated that Plaintiff had "some discogenic disease, mostly fibromyalgia, and significant anxiety." (*Id.*)

Plaintiff testified that she did not feel she was capable of employment due to fatigue, depression, and pain. (Tr. 82). She typically naps one to two hours per day. (Tr. 99). She testified that she continues to self-catheterize herself six to eight times a day,[4] each time lasting approximately twenty minutes. (Tr. 100-01).

**Psychological Impairments**

Plaintiff was sent for a psychological consultative examination performed by Dr. Kramer at the request of the Bureau of Disability Determination ("BDD") on August 20, 2007. (Tr. 360-65). Plaintiff reported that she suffered from panic attacks when she is around large crowds of people. She stated that her panic attacks began about five years

---

[3] "Nocturia" refers to the need to get up in the night to urinate, thus interrupting sleep.

[4] Plaintiff increased the frequency of catherization from four to six times per day since 2009, although she had not been instructed to make the change. (Tr. 60).

ago. She described her depression as "debilitating," causing a lack of motivation, isolation, and crying spells. Plaintiff stated that she would stay in bed all of the time if her mother did not insist that she get up and do something. She felt that she would have difficulty getting up and going to work on a regular basis because of her depression. Regarding activities of daily living, Plaintiff reported that she stays in bed almost the entire day approximately three days per week. She will take showers but her mother usually has to call and remind her to do so. She will occasionally cook and attempt to perform chores but she does not do this very often. According to Dr. Kramer, Plaintiff reported a rather limited lifestyle due to depression and anxiety. Dr. Kramer noted that Plaintiff reported a "good deal of difficulty in terms of her concentration and focus, especially if she is depressed or under stress." (*Id.*)

Dr. Kramer diagnosed major depression and panic disorder with agoraphobia. Dr. Kramer assigned a GAF of 49.[5] (Tr. 364). He opined that Plaintiff is moderately impaired in her ability to relate to others and moderately impaired in her ability to understand, remember, and follow instructions. He further opined that Plaintiff is markedly impaired in her ability to perform simple and repetitive tasks and markedly impaired in her ability to withstand the stress and pressures of day-to-day work activities.

---

[5] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. A score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

He concluded that Plaintiff would most likely have work-attendance issues secondary to her depression, even on simple and repetitive tasks.

The evidence was reviewed by non-examining BDD reviewer, Dr. Steven Meyer, Ph.D., on October 11, 2007. (Tr. 395-98). Dr. Meyer opined that the record contained evidence that was entitled to greater consideration than Dr. Kramer's "one time consultative evaluation." This evidence included the following: Field Office observations, Plaintiff's reported activities of daily living, and Plaintiff's work history. (Tr. 397). Dr. Meyer noted Plaintiff's lack of "significant psych history." He opined that Plaintiff could perform simple and moderately complex routine work that she is motivated to perform, in a setting with regular expectations with occasional intermittent interactions with others and few changes. Dr. Meyer opined that Plaintiff "attended consultative evaluation and presented with symptoms not fully consistent with collateral medical examination."

Plaintiff was seen for a diagnostic assessment in July 2008. (Tr. 664-75). On intake, Plaintiff reported that she had no desire to do anything and did not want to talk to anyone. (Tr. 664). She reported anxiety and nervousness daily, including panic attacks and confusion if she had to go anywhere where there were large crowds. (Tr. 670). She reported that she cannot fall asleep, cannot stay asleep, and sometimes sleeps for 10-12 hours. (Tr. 671). On initial psychiatric evaluation, Plaintiff was diagnosed with bipolar disorder, with moderate symptoms; anxiety disorder; alcohol abuse in early remission;

and cannabis abuse in sustained remission.  Plaintiff was assigned a GAF of 51.[6]  (Tr. 682).

The evidence was reviewed again by a non-examining BDD reviewer, Dr. Patricia Semmelman, on March 31, 2008.  (Tr. 459).  Dr. Semmelman affirmed the findings of Dr. Meyer, stating that "the severity of the conclusions by the consulting evaluator are not adopted due to inconsistencies."  Dr. Semmelman cited to Plaintiff's Symptom's Report, in which she stated that she sleeps 14 hours a day.  This was found to be inconsistent with Plaintiff's report to the mental health clinic that she has difficulty sleeping.  Dr. Semmelman also stated that Plaintiff's reports of severe depression and panic attacks had not shown these problems to be at the marked level.

Plaintiff testified that she does not get out of bed two or three days a week due to fatigue, pain, and depression.  (Tr. 99).  She did not feel she would be capable of working because she "just couldn't get out of bed" due to her fatigue, pain, and depression.  (Tr. 82).

**B.**

First, Plaintiff argues that the ALJ erred by failing to grant proper weight to the opinion of consultative psychological examiner, Dr. Kramer.[7]

---

[6]  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

[7]  The procedural "good reasons" requirement that applies to rejecting a treating physician's opinion does not apply to non-treating physicians.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873,  876 (6th Cir. 2007).

In assessing Plaintiff's mental capacity, the ALJ restricted Plaintiff to low stress jobs with simple one-or two-step tasks requiring little, if any, concentration; no production quotas; no direct contact with the general public; and limited contact with co-workers and supervisors with no teamwork. (Tr. 13).

The ALJ relied primarily on the opinion of Dr. Meyer, who reviewed Plaintiff's record and opined that she had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 16-17, 363). Dr. Meyer contrasted the more severe limitations in Dr. Kramer's report with Plaintiff's positive work history, her lack of significant psychological history, including no history of in-patient hospitalizations, and her ability to respond to questions during her interview without difficulty. (Tr. 351). He opined that, when motivated, Plaintiff was capable of performing simple and moderately complex routine work with regular expectations, only occasional intermittent interactions with others, and few changes. (Tr. 351). The ALJ did not adopt Dr. Kramer's opinion that Plaintiff had "marked" limitations in performing certain mental tasks because it was inconsistent with his own examination findings and Plaintiff's testimony regarding her activities of daily living. (Tr. 16-17, 319).

During the examination, Dr. Kramer noted that Plaintiff presented with no acute emotional distress and interacted appropriately at the examination. (Tr. 316). Plaintiff was adequately dressed and groomed, and was able to drive herself to the appointment on time. (Tr. 316). Plaintiff was well-oriented and appeared to be in good contact with

reality without any evidence of a thought disorder. (Tr. 316). She was of average intelligence, spontaneous, and denied any past psychotic symptoms. (Tr. 316). Dr. Kramer found that Plaintiff displayed no cognitive difficulties during the examination, and opined that Plaintiff had necessary insight and judgment to live independently, make decisions regarding her future, and manage her own funds. (Tr. 317). Despite these largely normal findings, Dr. Kramer appears to have relied significantly on Plaintiff's self-reports in finding that Plaintiff had several marked limitations in performing mental tasks. (Tr. 318). For example, Dr. Kramer observed that Plaintiff displayed no cognitive difficulties during the examination, but opined that Plaintiff was moderately impaired in her ability to understand, remember, and follow instructions. (Tr. 319). Dr. Kramer opined that Plaintiff could live independently, make decisions regarding her future, and manage her own funds (Tr. 317), but relied on Plaintiff's complaints in finding that she had marked limitations in maintaining concentration, persistence, or pace. (Tr. 319). A physician's opinion based on a claimant's subjective allegations, rather than the medical evidence, is not entitled to significant weight. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004). Therefore, Dr. Kramer's objective findings do not support his highly restrictive opinion.

Plaintiff argues that Dr. Meyer incorrectly found that Plaintiff's work history was inconsistent with Dr. Kramer's opinion. However, Dr. Meyer's opinion was based on the entire record available to him – not just Plaintiff's work history. Moreover, Plaintiff's work history does not support Dr. Kramer's highly restrictive opinion. In fact, Plaintiff

did not claim that she lost her job due to any mental impairment. Instead, she testified that she was fired primarily because of problems with her foot. (Tr. 43). Moreover, she stated that she could wash dishes if she sits in a chair and could help make the bed. (Tr. 55). Plaintiff also stated that she went grocery shopping, attended church, embroidered, and watched television. (Tr. 55-56, 58). Plaintiff's mother noted that Plaintiff enjoyed reading. (Tr. 208).

Additionally, Dr. Meyer's opinion was affirmed by Dr. Semmelman, who noted that Plaintiff inconsistently reported that she sleeps 14 hours at a time while also stating that she had difficulty sleeping. (Tr. 413). Moreover, Plaintiff failed to cite objective medical evidence or medical opinion from a treating source reflecting the severity of the sleep problems she describes. 20 C.F.R. §§ 404.1529(c); 416.929(c) (complaints must be supported by evidence). Therefore, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC finding.[8] (Tr. 15).

Finally, Plaintiff argues that the ALJ incorrectly stated that Plaintiff stopped counseling in late 2008. The reviewing court must "directly ask[] the harmless-error question," which forbids "reversing for error regardless of its effect on the judgment." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d F.3d 541, 547 (6th Cir. 2004) (where "remand would be an idle and useless formality," courts are not required to "convert judicial

---

[8] To the extent Plaintiff claims that she had difficulty in crowds, the ALJ restricted her to no direct contact with the general public and limited contact with co-workers and supervisors with no teamwork. (Tr. 13).

review of agency action into a ping-pong game"). Plaintiff has not met her burden of demonstrating that she was harmed by the ALJ's error. Specifically, the treatment notes from after 2008 do not undermine the ALJ's RFC finding or demonstrate disability. In fact, a January 2010 treatment note indicates that Plaintiff was "doing alright" and was "hopeful of being able to get Soc. Sec. Benefits so she c[ould] get out of [her mother's house]." (Tr. 535).

Accordingly, the ALJ's decision is supported by substantial evidence.

## C.

Next, Plaintiff maintains that the ALJ erred by failing to find that her neurogenic bladder was a severe physical impairment.

An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521 and 416.921.

On June 4, 2008, Dr. Monsour started Plaintiff on intermittent catherization three times a day to address Plaintiff's complaints of urinary frequency and urgency. (Tr. 560). On June 25, 2009, Dr. Monsour suggested that she increase her catheterizing more frequently to four times a day. (Tr. 559). Although Plaintiff testified that she used a catheter, there is no objective evidence to show that use of a catheter would interfere with her ability to maintain a normal work schedule or cause an unusual number of bathroom

breaks.  In fact, there is no objective evidence or opinion from any treating source indicating that Plaintiff's urinary problems would prohibit work.

The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Substantial evidence supports the ALJ's finding that the neurogenic bladder was not a severe physical impairment and that Plaintiff was not disabled.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing.  The ALJ's decision is supported by substantial evidence and is affirmed.

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Debra Boekel was not entitled to disability insurance benefits, is found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

Date:  3/6/12                                                            *s/ Timothy S. Black*
                                                                                Timothy S. Black
                                                                                United States District  Judge